DAVIS, Judge.
 

 *244
 
 South Carolina Telecommunications Group Holdings, d/b/a Spirit Communications ("Plaintiff") appeals from the trial court's order granting summary judgment in favor of Miller Pipeline LLC ("Defendant"). On appeal, Plaintiff contends that the trial court erred by granting Defendant's motion for summary judgment despite the existence of a genuine issue of material fact. After careful review, we affirm the trial court's order.
 

 Factual Background
 

 Plaintiff provides Internet, data, and voice communication services to consumers in South Carolina, North Carolina, and Georgia. To facilitate this service, Plaintiff relies, in part, upon underground fiber optic cables to transmit data. One such fiber optic cable, designated as "NC-W5 Huntsville to Shelby" ("the Cable"), was buried along Highway 27 outside of Bolger City, North Carolina.
 

 On 26 February 2013, Defendant, a company that installs pipelines, entered into a contract with Monroe Roadways Contractors, Inc. to install "a force main, gravity sewer and pump station" in Lincoln County. The project required excavation in the area where the Cable was buried along Highway 27.
 

 *636
 
 Prior to beginning the excavation, Defendant contacted North Carolina's One-Call system ("the One-Call System") in accordance with the provisions of the Underground Damage Prevention Act ("the Act"), formerly codified as N.C. Gen.Stat. § 87-100
 
 et seq.
 

 ,
 

 [1]
 
 to ensure that all entities with underground utility lines in the vicinity would be provided with notice and afforded the opportunity to clearly mark their underground lines with surface paint in order to minimize the likelihood that Defendant's excavation work would damage them. Plaintiff, upon receiving this notice, hired a company called Synergy One to mark the Cable.
 

 *245
 
 After all of the underground lines in the vicinity had been marked but before Defendant began its excavation work, rain washed away a significant portion of the surface paint marking the Cable and various other underground lines. Defendant again contacted the One-Call System, and the underground lines in the vicinity-including the Cable-were once again marked with surface paint.
 

 On 7 March 2013, Defendant's employees began their excavation work. At approximately 9:28 a.m. on that same day, an employee of Defendant struck the Cable, damaging it and rendering it out of service for approximately 16 hours before it could be repaired.
 

 On 26 August 2014, Plaintiff filed a complaint against Defendant in Mecklenburg County Superior Court alleging negligence and trespass in connection with the damage caused to the Cable. On 17 April 2015, Defendant filed a motion to dismiss and, in the alternative, a motion for summary judgment. In support of its motion for summary judgment, Defendant filed the affidavits of Eugene Hamilton ("Hamilton"), the lead driller for Defendant, and Richard Bowles ("Bowles"), Defendant's safety and quality coordinator. Plaintiff responded to Defendant's motion by submitting the affidavit of Michael Baldwin ("Baldwin"), Plaintiff's vice-president of legal affairs.
 

 Defendant's motion was heard before the Honorable Jesse B. Caldwell on 19 May 2015. At the conclusion of the hearing, the trial court granted Defendant's motion for summary judgment. A written order reflecting the trial court's ruling was filed on 2 June 2015. Plaintiff gave timely notice of appeal on 15 June 2015.
 

 Analysis
 

 I. Negligence Claim
 

 Plaintiff first argues that the trial court erred in granting summary judgment in favor of Defendant on Plaintiff's negligence claim because Baldwin's affidavit raised a genuine issue of material fact that required resolution by a factfinder at trial. We disagree.
 

 "The entry of summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. An order granting summary judgment is reviewed
 
 de novo
 
 on appeal."
 
 Martin Marietta Materials, Inc. v. Bondhu, LLC,
 
 --- N.C.App. ----, ----,
 
 772 S.E.2d 143
 
 , 145 (2015) (internal citation and quotation marks omitted).
 

 *246
 
 It is well settled that
 

 [o]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a
 
 prima facie
 
 case at trial. It is also clear that the opposing party is not entitled to have the motion denied on the mere hope that at trial he will be able to discredit movant's evidence; he must, at the hearing, be able to point out to the court something indicating the existence of a triable issue of material fact. More than allegations are required because anything less would allow plaintiffs to rest on their pleadings, effectively neutralizing the useful
 
 *637
 
 and efficient procedural tool of summary judgment.
 

 Van Reypen Assocs., Inc. v. Teeter,
 

 175 N.C.App. 535
 
 , 540,
 
 624 S.E.2d 401
 
 , 404-05 (internal citations and quotation marks omitted),
 
 disc. review improvidently allowed,
 

 361 N.C. 107
 
 ,
 
 637 S.E.2d 536
 
 (2006).
 

 Rule 56(e) of the North Carolina Rules of Civil Procedure addresses the requirements for affidavits submitted in connection with a motion for summary judgment and provides, in pertinent part, as follows:
 

 (e) Form of affidavits; further testimony; defense required.-Supporting and opposing affidavits
 
 shall be made on personal knowledge,
 
 shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
 

 N.C.R. Civ. P. 56(e) (emphasis added).
 

 In applying Rule 56(e), our appellate courts have held that
 

 [a]ffidavits supporting a motion for summary judgment must be made on personal knowledge. Although a Rule 56 affidavit need not state specifically it is based on personal knowledge, its content and context must show its material parts are founded on the affiant's personal knowledge. Our courts have held affirmations based on personal awareness, information and belief, and what the affiant thinks, do not comply with the personal knowledge requirement of Rule 56(e). Knowledge obtained from the review of
 
 *247
 
 records, qualified under Rule 803(6), constitutes personal knowledge within the meaning of Rule 56(e).
 

 Hylton v. Koontz,
 

 138 N.C.App. 629
 
 , 634-35,
 
 532 S.E.2d 252
 
 , 256 (2000) (internal citations, quotation marks, and brackets omitted),
 
 appeal dismissed and disc. review denied,
 

 353 N.C. 373
 
 ,
 
 546 S.E.2d 603
 
 (2001).
 

 This Court has previously stated that
 

 [t]he Act addresses logistical problems which arise when excavation is necessary in the vicinity of a utility company's underground cable lines.... For a utility to undertake excavations, it must know the position of other cables or lines in an area. The Act outlines the framework that should be followed prior to excavating in an area where underground utility lines are present. Generally, a person planning to excavate near underground utility lines must provide at least two days' notice to the utility. Once notified, the onus is on the utility company to locate and describe all of its lines to the excavating party.
 
 Failure to identify proprietary cable lines, after a proper request by the excavating party, absolves an excavator from liability for damage to the notified utility's line.
 

 Lexington Tel. Co. v. Davidson Water, Inc.,
 

 122 N.C.App. 177
 
 , 179,
 
 468 S.E.2d 66
 
 , 68 (1996) (internal citations omitted and emphasis added).
 

 In the present case, the resolution of Plaintiff's negligence claim hinged on whether the marking procedure contemplated by the Act was followed. In essence, Plaintiff alleges that the Cable was properly marked at the time of the injury, while Defendant has presented evidence to the contrary.
 

 At the summary judgment stage, Defendant submitted the affidavit of Hamilton, its lead driller at the site of the 7 March 2013 excavation, who testified based on his personal knowledge that (1) advance notice was provided by Defendant to the owners of underground utilities in the area; (2) all lines in the area were marked with surface paint applied to the surface of the ground; and (3) "[t]here were no locate markings within 2 ½ feet (plus the width of the underground line) of the point of impact with the underground line as set forth hereinabove. In fact, the nearest marking was at least 6 feet from this particular point of impact."
 

 Defendant also offered the affidavit of Bowles, who stated that he too had personal knowledge of the events of 7 March 2013 and that (1) "[t]here were no lines, paint, marks, locates or other indication anywhere
 
 *248
 
 in the vicinity of the point of impact with the fiber optic line to notify [Defendant] or others that the line was buried in that location"; and (2) "[t]here were no locate markings within 2 ½ feet (plus the width of the underground line) of the point of impact with the underground line as set forth hereinabove. In fact, there
 
 *638
 
 were no locates at all in the vicinity of this particular point of impact."
 

 The only evidence offered by Plaintiff in response to Defendant's summary judgment motion was the affidavit of Baldwin.
 
 [2]
 
 In his affidavit, Baldwin simply makes the conclusory statement that "[a]ccording to photographs and video, the fiber optic cables were clearly marked and delineated." Nowhere in the affidavit does Baldwin explain the specific "photographs and video" to which he is referring. Nor does the affidavit provide any indication that he actually possessed personal knowledge on this issue or that the statements in his affidavit were based upon records he reviewed that were admissible under Rule 803(6) of the North Carolina Rules of Evidence.
 

 We find our opinion in
 
 Eugene Tucker Builders, Inc. v. Ford Motor Co.,
 

 175 N.C.App. 151
 
 ,
 
 622 S.E.2d 698
 
 (2005),
 
 cert. denied,
 

 360 N.C. 479
 
 ,
 
 630 S.E.2d 926
 
 (2006), instructive. In that case, the plaintiff leased a vehicle manufactured by Ford Motor Company ("Ford") from an authorized Ford dealership. Ford provided an express warranty for the vehicle only covering damage resulting from the installation of parts manufactured by
 
 Ford-authorized
 
 manufacturers.
 
 Id.
 
 at 152,
 
 622 S.E.2d at 699
 
 .
 

 The plaintiff had an anti-theft device installed in the vehicle that was manufactured by Directed Electronics, Inc. ("DEI"). The device caused severe damage to the vehicle's electronics system, and the plaintiff sued Ford based on the express warranty.
 

 Id.
 

 Ford filed a motion for summary judgment supported by the affidavit of Jim Cooper, a parts supplier for Ford, who testified that DEI was not a Ford-authorized manufacturer and that, for this reason, the anti-theft device was not covered under the express warranty.
 
 Id.
 
 at 155,
 
 622 S.E.2d at 701
 
 . In response, the plaintiff submitted the affidavit of James Rhyne, a former manager of the third-party company that installed the DEI anti-theft device, stating his
 
 belief
 
 that DEI was an authorized manufacturer of Ford electronic systems.
 
 Id.
 
 at 153-55,
 
 622 S.E.2d at 699-701
 
 . The trial court granted Ford's motion.
 
 Id.
 
 at 153,
 
 622 S.E.2d at 699-700
 
 .
 

 *249
 
 On appeal, we affirmed the trial court's order.
 

 After carefully reviewing the record, we conclude that plaintiff's affidavit does not create an issue of material fact regarding whether the manufacturer of the anti-theft device, DEI, was a Ford-authorized manufacturer. When affidavits are offered in opposition to a motion for summary judgment, they must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Here, Mr. Rhyne's affidavit does not indicate how he had personal knowledge that DEI is an authorized Ford parts manufacturer. It appears that the source of Mr. Rhyne's information is an exhibit attached to his affidavit, which is a diagram published by DEI illustrating how to wire an anti-theft bypass to a Ford vehicle. This document does not establish that DEI is a Ford-authorized manufacturer. The document was not published by Ford, and Mr. Rhyne avers no other affiliation with Ford Motor Company or Ford-authorized manufacturers. Also, Mr. Rhyne does not assert that his knowledge is based upon business records that he reviewed in the course of his employment. As the content of the Rhyne affidavit does not satisfy the personal knowledge requirement of Rule 56(e), it could not have been considered by the trial court in ruling on the summary judgment motion.
 

 Id.
 
 at 156,
 
 622 S.E.2d at 701
 
 (internal citations, quotation marks, brackets, and ellipses omitted).
 

 In our opinion, we contrasted Rhyne's affidavit with the affidavit from Cooper, noting that Cooper's affidavit "reveals that the affiant has personal knowledge of Ford-authorized manufacturers through employment positions. As the moving party, defendant has established that a non-Ford part was installed on plaintiff's vehicle and that this part is
 
 *639
 
 excluded from coverage under the express warranty."
 
 Id.
 
 at 156,
 
 622 S.E.2d at 702
 
 .
 

 Similarly, in the present case, Baldwin's affidavit does not state or otherwise provide any indication that his testimony was based on his personal knowledge of the marking of the Cable or of Defendant's excavation activities on 7 March 2013. Moreover, Baldwin's affidavit consists almost entirely of verbatim (or almost verbatim) recitations of the allegations set forth in Plaintiff's complaint. The affidavit is
 
 *250
 
 replete with conclusory statements-many of which contain purely legal conclusions.
 

 We dealt with a similar situation in
 
 Campbell v. Bd. of Educ. of Catawba Cty. Sch. Admin. Unit,
 

 76 N.C.App. 495
 
 ,
 
 333 S.E.2d 507
 
 (1985),
 
 disc. review denied,
 

 315 N.C. 390
 
 ,
 
 338 S.E.2d 878
 
 (1986), in which we held as follows:
 

 Plaintiff's affidavit merely restating the allegations of the complaint consists of conclusory allegations, unsupported by facts. It thus does not suffice to defeat a motion for summary judgment. When the moving party presents an adequately supported motion, the opposing party must come forward with facts, not mere allegations, which controvert the facts set forth in the moving party's case, or otherwise suffer a summary judgment.
 

 Id.
 
 at 498-99,
 
 333 S.E.2d at 510
 
 (internal citations, quotation marks, and brackets omitted).
 

 We similarly conclude here that Baldwin's affidavit failed to create a genuine issue of material fact on the issue of whether Defendant was negligent. Unlike Baldwin, Hamilton and Bowles offered testimony based on their own personal knowledge, and their testimony established that the location of the Cable had not been properly marked. Their affidavits further demonstrate that Defendant complied with all relevant portions of the Act in performing its excavation work. Therefore, summary judgment was properly granted for Defendant as to Plaintiff's negligence claim.
 

 II. Trespass Claim
 

 In a related argument, Plaintiff argues that the trial court erred in granting summary judgment to Defendant on its trespass claim. Once again, we disagree.
 

 The elements of a trespass claim are "(1) possession of the property by the plaintiff when the alleged trespass was committed; (2) an unauthorized entry by the defendant; and (3) damage to the plaintiff from the trespass."
 
 Keyzer v. Amerlink, Ltd.,
 

 173 N.C.App. 284
 
 , 289,
 
 618 S.E.2d 768
 
 , 772 (2005) (citation and quotation marks omitted),
 
 aff'd per curiam,
 

 360 N.C. 397
 
 ,
 
 627 S.E.2d 462
 
 (2006). "[I]n the absence of negligence, trespass to land requires that a defendant intentionally enter onto the plaintiff's land."
 
 Rainey v. St. Lawrence Homes, Inc.,
 

 174 N.C.App. 611
 
 , 614,
 
 621 S.E.2d 217
 
 , 220 (2005).
 

 *251
 
 As with its negligence claim, Plaintiff has failed to show a genuine issue of material fact with regard to its trespass claim. There is no suggestion in the record that Defendant lacked legal authorization to conduct the excavation activities at issue. Moreover, as discussed above, the admissible evidence of record established that the impact with the Cable was not intentional and instead resulted by accident as a result of the fact that the Cable was not properly marked. Moreover, Plaintiff tacitly acknowledged Defendant's right to engage in excavation activities by twice hiring a third-party to mark the Cable so that it would not be disturbed during Defendant's excavation activities. Accordingly, no valid trespass claim exists on these facts.
 
 [3]
 

 Conclusion
 

 For the reasons stated above, we affirm the order of the trial court granting summary
 
 *640
 
 judgment in favor of Defendant.
 
 [4]
 

 AFFIRMED.
 

 Judges CALABRIA and TYSON concur.
 

 [1]
 

 We note that 2013 N.C. Sess. Laws ch. 407, §§ 1-2 repealed and replaced the Act with the Underground Utility Safety and Damage Prevention Act, codified as N.C. Gen.Stat. § 87-115
 
 et seq.
 

 ,
 
 effective 1 October 2014. However, the Act was still in effect at the time of the 7 March 2013 incident giving rise to the present appeal.
 

 [2]
 

 We note that Baldwin's job title is vice-president of legal affairs for Plaintiff.
 

 [3]
 

 Given the unrebutted evidence that Plaintiff failed to properly mark the Cable, Defendant is also absolved from liability for damages on either of Plaintiff's theories due to the provision of the Act providing that "[f]ailure to identify proprietary cable lines, after a proper request by the excavating party, absolves an excavator from liability for damage to the notified utility's line."
 
 Lexington Tel. Co.,
 

 122 N.C.App. at 179
 
 ,
 
 468 S.E.2d at 68
 
 .
 

 [4]
 

 Based on our resolution of this appeal on the grounds set forth herein, we need not address Defendant's alternative argument that Plaintiff was required to produce expert testimony as to the applicable standard of care Defendant should have employed in conducting its excavation activities.
 
 See
 

 Youse v. Duke Energy Corp.,
 

 171 N.C.App. 187
 
 , 196,
 
 614 S.E.2d 396
 
 , 403 (2005) ("Since our determination of the foregoing issues [is] dispositive of this case on appeal, we need not address plaintiff's remaining assignments of error.").